UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| HEATHER J. JONES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | NO. 5:21-cv-0099-MAS |

**MEMORANDUM OPINION & ORDER**

Heather J. Jones ("Jones") appeals the Commissioner's denial of her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The Court addresses the parties' competing summary judgment motions. [DE 21, 27]. For the reasons discussed below, the Court finds that the Administrative Law Judge ("ALJ") applied the proper standards and that the ALJ's decision is supported by substantial evidence. Thus, the Court affirms the Commissioner's decision to deny SSI benefits.

    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

Jones filed an SSI application on February 26, 2019, alleging disability beginning December 4, 2015.[1] [Administrative Transcript ("Tr.") at 192-98]. Jones alleges disability due to nerve damage of the foot, diabetes, hypothyroidism, post-traumatic stress disorder ("PTSD"), depression, anxiety, panic attacks, and asthma. [Tr. at 76-77]. Jones' claim was initially denied

---

[1] SSI payments cannot be made prior to the month claimant files an application. 20 C.F.R. § 416.335.

1

on June 26, 2019 [Tr. at 75] and denied upon reconsideration on September 3, 2019 [Tr. at 91]. ALJ Neil Morholt conducted a hearing on May 12, 2020. Patsy Hughes, a non-attorney representative, represented Jones at the hearing, and an impartial Vocational Expert ("VE") appeared and testified. ALJ Morholt issued an unfavorable decision on June 3, 2020. [Tr. at 39-40 and 10].

Jones was 36 years old at the alleged onset date. [Tr. at 76]. She attended school through part of the ninth grade and reported past work as a cleaner and shift manager. [Tr. at 46-47, 213]. At the hearing, Jones testified that she has pain from her neck to her toes, though her back and right leg hurt the most. [Tr. at 50]. She treated with a mental health therapist but stopped due to a lack of insurance. [Tr. at 56]. She suffers from panic attacks due to her anxiety and depression. [Tr. at 57]. She testified that she has never taken any mental health medications. [Tr. 56]. Jones further testified she does not go into public places and waits in her car while her husband goes into the store. [Tr. at 58]. Jones' medical records and testimony reflect that she has decided to avoid medications to address her mental health issues.

Psychotherapy records from January 2019 reflected that Jones had a labile affect, anxious and depressed mood, distractibility, flight of ideas, and pressured speech; however, her insight, judgment, memory, thought content, perception, and behavior were all "good," "intact," or "appropriate." [Tr. at 527]. Her diagnoses included acute PTSD and moderate major depressive disorder with anxious distress. [Tr. at 529]. Jones' psychotherapy notes contradicted her testimony that she does not go to public places, as she reported going to a circus, shopping, and to a male stripper show, among other outings. [Tr. at 548-69]. Jones' answers to questions in connection with her SSI application stated that she *did not* shop but attended family birthday parties. [Tr. at 223]. Further, Jones reported that she could pay attention, finish what she started,

2

follow written and spoken instructions, and get along with authority figures, but that she did not handle stress well and was fearful. [Tr. at 240-41].

On May 28, 2019, consultative examiner Jennifer Fishkoff, Psy.D., examined Jones. [Tr. at 589]. Dr. Fishkoff opined Jones' ability to tolerate frustration, conform to social standards, and maintain employment was moderately impaired. [Tr. at 594]. Her ability to understand, retain, and follow instructions as would be required over an eight-hour workday was moderately to severely impaired. [Tr. at 594]. Her ability to sustain attention to perform simple and repetitive tasks was moderately to severely impaired. [Tr. at 594]. She added, "these conclusions are based upon her self-report, her multiple medical problems, and the extent of her physical problems." [Tr. at 594]. Lastly, she opined Jones did not appear to be capable of tolerating the stress and pressures associated with day-to-day work activity. [Tr. at 594].

State agency psychologist Michelle Bornstein, Psy.D., reviewed the record in connection with Jones' SSI claim in June 2019 and found that Jones was able to understand and remember simple instructions and procedures; sustain attention, concentration, effort, and pace for simple tasks requiring little independent judgment and minimal variations (and do so for extended periods); interact occasionally with supervisors, peers, and the public; and adapt adequately to situational conditions and changes in a routine work setting. [Tr. at 86-87]. A second state agency psychologist, Kay Barnfield, Psy.D., subsequently concurred [Tr. at 103-05], finding that Dr. Fishkoff's "opinion is an overestimate of the severity of the individual's restrictions/limitations." [Tr. at 105].

The ALJ considered the entire record (summarized above) and determined Jones has the Residual Functional Capacity ("RFC") to perform light work except:

> she should never climb ladders, ropes and scaffolds or more than occasionally climb ramps and stairs. She can frequently balance, occasionally stoop, kneel, and crouch,

3

but should never crawl. She can be frequently exposed to vibration. She should avoid all exposure to unprotected heights and moving mechanical parts. She is able to understand, remember, and carry out simple routine repetitive tasks in a routine work setting having minimal variations and little independent judgment for extended 2-hour periods before the need for a regularly scheduled break. She is able to occasionally interact with supervisors, coworkers, and the general public.

[Tr. at 15-16].

The VE testified that an individual with Jones' age, education, and the ALJ's RFC who was further limited such that she would need to use a two-handed walker to ambulate for balance, would not be able to perform any jobs in the national economy as this would require an accommodation by the employer. [Tr. at 71]. If the individual needed a fifteen-minute break every hour, there would be no work available to her. [Tr. at 72]. Similarly, if off task more than 10 percent of the workday, absent from work more than 1 day per month, or missed up to 2 hours such that she was either late or needed to leave early, there would be no work available to her. [Tr. at 72-73]. Based on vocational expert testimony the ALJ found Jones unable to perform past work, but able to perform other light unskilled occupations existing in significant numbers. [Tr. at 26]. Accordingly, the ALJ determined that Jones is not disabled.

## II.  LEGAL FRAMEWORK[2]

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of*

---

[2] The Court notes that the legal standard for DIB claims mirrors the standard for Supplemental Security Income ("SSI") claims. *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). The Court thus references both SSI and DIB case law interchangeably throughout, mindful of the distinct Title II DIB-specific regulations.

*Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have

reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4).

ALJ Morholt proceeded through all five sequential steps in this case. The Court evaluates his analysis and Jones's arguments challenging it as set forth below.

### III. ANALYSIS

As is typical for disability insurance benefits ("DIB") cases, the overarching issue is whether ALJ Morholt's disability determination is supported by substantial evidence in the record and whether ALJ Morholt applied the correct procedural standards. Jones argues that ALJ Morholt failed to evaluate properly the opinion of Dr. Fishkoff in accordance with the applicable regulations and agency policy. Specifically, Jones claims the ALJ did not provide Jones (or the Court) with a reasonably adequate explanation of his reasons for rejecting Dr. Fishkoff's opinion.

6

Jones does not challenge the ALJ's handling of any of the physical medical evidence or any of the physical restrictions included in the RFC.

For the reasons set forth below, the Court rejects Jones' challenges to the mental health aspects of the RFC and supporting analysis. The Court concludes that ALJ Morholt complied with the regulatory standards in assessing Dr. Fishkoff's opinion and that the mental RFC is supported by substantial evidence in the record. Affirmance of the agency decision is required.

A. **THE ALJ ADEQUATELY CONSIDERED AND ARTICULATED HIS REASONS FOR FINDING DR. FISHKOFF'S OPINION UNPERSUASIVE.**

The updated Social Security regulations governing the ALJ's handling of medical evidence from various sources apply in this case given the application's filing after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-5884 (Jan. 18, 2017). The relevant revisions altered the hierarchy of medical sources and how the ALJ evaluates medical opinion evidence. [*Id.*]. Under the revised regulations, particular medical sources no longer receive specific evidentiary weight, and the ALJ simply must articulate how persuasive each medical opinion is with respect to various relevant factors. 20 C.F.R. §§ 404.1520c, 416.920c. The most important of these factors is the medical opinion's supportability and consistency, and the ALJ must state in his decision how he considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may consider other listed factors as appropriate, including the extent of the source's treatment relationship with the claimant, the frequency of examinations, and the source's specialization; however, the ALJ need not specifically explain how any factors other than supportability and consistency were considered. 20 C.F.R. §§ 416.920c(b)(2) (providing that consistency and supportability are the most important factors and promising that the agency "will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or

7

prior administrative medical findings in" the administrative decision). The ALJ must consider, and articulate his consideration of, the source opinion's consistency with other medical and nonmedical evidence in the record and the quantum of relevant, objective medical evidence and supporting explanations presented by the medical source to support his opinion.

Jones argues that the ALJ's analysis of Dr. Fishkoff's opinion does not comply with § 416.920c because it fails to appropriately consider the consistency and supportability of Dr. Fishkoff's assessment, as required by the regulation.[3] 20 C.F.R. § 416.920c(b)(2). Jones argues that ALJ Morholt failed to discharge this duty because she phrased things imprecisely, relied on improper considerations, and erred in ignoring the physical pain proof when considering Dr. Hundley's opinion's consistency with the overall record.

1. **Consistency**

The ALJ incorporated some metal restrictions into the RFC.[4] However, ALJ Morholt found Dr. Fishkoff's opinion to be inconsistent with the record and not persuasive. The ALJ described this finding throughout his opinion, not just in a "conclusory fashion" in one paragraph as Jones alleges. The ALJ describes the supportability and consistency findings but does not necessarily use those words. Such specificity or magical incantation of words is not required. *Cf. Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (unpublished) (upholding an ALJ's step three finding where the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three"). In making his RFC finding, the ALJ noted (as to her mental health, the only finding at issue here) that Jones takes care of children, that therapy

---

[3] The Commissioner notes that Dr. Fishkoff's opinion falls short of what is required of a medical opinion in the revised regulations, but nonetheless, ALJ Morholt treated Dr. Fishkoff's conclusions as a medical opinion. Thus, the Court will do the same.

[4] "She is able to understand, remember, and carry out simple routine repetitive tasks in a routine work setting having minimal

8

was helping though her depression and anxiety increased when she ceased therapy, she is the only one who is able to drive in her family so she bears that responsibility, she has panic attacks in her sleep five to six times per month, she does not experience panic attack triggers while awake, and she avoids crowded stores. [Tr. at 17]. The ALJ noted Jones' management of her mental health symptoms with her primary care doctor; specifically, he stated that depression was noted in August 2017, no depression or other mental health complaints at a follow-up in February 2018, that Jones was "very emotional" but without "mental abnormalities" in December 2018 nor in January 2019. She began seeing a mental health counselor in January 2019 to work through issues related to depression, anxiety, childhood abuse and neglect, and grief from losing an infant at birth. [Tr. at 18].

The ALJ notes Jones' therapy and primary care follow-up throughout 2019, in which she describes her symptoms (sleep disturbances, anxiety, and grief) but also described managing her symptoms with exercise, taking her son on outings, homeschooling her son, planting vegetables in her garden, going to the library, planning a 4th of July cookout, and helping with a friend's funeral arrangements. [Tr. at 20]. The ALJ found that, despite alleging debilitating social isolation and fears, the mental health records contained multiple reports of Jones going out in public with friends and family. The ALJ observed that although Jones had experienced trauma and grief resulting in depression and anxiety, she "nevertheless has been able to think clearly, communicate effectively, and act in her own interest," and that "the description of her day-to-day functioning as described in the mental health treatment records suggests she has been more functional than she has asserted." [Tr. at 23]. These observations of Jones' inconsistent reports of her limitations and symptoms contributed to ALJ Morholt's conclusion that Dr. Fishkoff's opinion ""appear[ed] to be an overestimate of the severity of the claimant's restrictions/limitations," and were "inconsistent

9

with the mental health treatment records and the claimant's clinical presentations as a whole." [Tr. at 23]. *See* 20 C.F.R. § 416.920c(c)(2) (the consistency factor contemplates evaluating the opinion in view of the evidence from other medical sources and nonmedical sources). The Court finds that this conclusion meets the applicable legal standards, sufficiently builds a logical bridge for Jones to understand the reason for her denial and is supported by more than a scintilla of evidence. "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)).

### 2.  **Supportability**

The ALJ likewise addressed the supportability factor throughout his findings of fact and conclusions of law. Section 416.920c(c)(2) defines "supportability" as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). After describing Dr. Fishkoff's examination report in detail, ALJ Morholt goes on to say, several paragraphs below, that "[d]espite the moderate to severe restrictions assessed by consultative examiner Dr. Fishkoff in Ex. 7F, the claimant's clinical presentation during this exam was essentially within normal limits . . . [t]he description of her day-to-day functioning as described in the mental health treatment records suggests she has been more functional than she has asserted." [TR. at 21-23]. The ALJ further notes that Dr. Fishkoff's opinion is an overestimate of Jones' limitations "based somewhat on the claimant's subjective reporting." [Tr. at 23]. Jones take issue with this finding; however, the regulation, quoted above, specifically instructs the ALJ

10

to assess the amount of relevant *objective* medical evidence and supporting explanations. Throughout his findings of fact and conclusions of law, the ALJ repeatedly referenced the objective medical evidence and the how that evidence contradicted Jones' subjective complaints and self-reported limitations. Throughout two pages of his findings, ALJ Morholt articulated his reasons for concluding Dr. Fishkoff's opinion was not persuasive because it was not adequately supported by objective medical evidence. Though he could have drafted his opinion to state these findings in one concise paragraph, his findings satisfy the requirements of 20 C.F.R. § 416.920c.

## IV. CONCLUSION

The ALJ addressed specific evidence and inconsistencies in his discussion of Jones' subjective complaints, then referenced that evidence and those inconsistencies more broadly and briefly two paragraphs down in the opinion discussion rather than in the same paragraph as the discussion on Dr. Fishkoff's opinion. Viewing the discussion as a whole, however, the ALJ's rationale for finding Jones less mentally limited than either Dr. Fishkoff or Jones alleged, was clear. [Tr. 23]. As the regulation sets forth,

> it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 416.920c(b)(1); *See also*, *Hicks v. Comm'r of Soc. Sec.*, 2022 WL 3282273, at *12 (N.D. Ohio May 25, 2022). ALJ Morholt did just as § 416.920c(b)(1); nothing more was required. Just because his findings and conclusions could have been drafted more concisely, in a different order, or more artfully, does not make his findings and conclusions legally insufficient. ALJ

11

Morholt ultimately applied the appropriate standards and, viewing his decision as a whole, supported his interpretation and conclusions with record evidence and a reasonably logical analytical bridge.  For these reasons, the Court can conclude from the record that substantial evidence supports ALJ Morholt's RFC determination and VE-based non-disability finding.  Thus, the Court will affirm his decision.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir.2003) (mandating affirmance "if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.").

For these reasons, and the Court being sufficiently advised, **IT IS ORDERED** that the Commissioner's motion for summary judgment [DE 27] is **GRANTED** and Jones' competing motion for summary judgment [22] is **DENIED**.  A corresponding Judgment will follow.

Entered this 30th day of September, 2022.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY